

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 9366 | **DATE** | 12/17/2003 |
| **CASE TITLE** | Estate of Mark Thrash vs. Officer Thomas Aldridge et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry]   Memorandum Opinion and Order entered. Judgment is entered in favor of Defendants and against Plaintiffs on all counts of Plaintiffs' Amended Complaint. *AK*

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | 2 number of notices | Document Number |
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | DEC 1 8 2003 date docketed | 25 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | U.S. DISTRICT COURT CLERK | | |
| | Copy to judge/magistrate judge. | | 12/17/2003 date mailed notice | |
| | FT/*secy* courtroom deputy's initials | 03 DEC 17 AM 2:56 Date/time received in central Clerk's Office | FT mailing deputy initials | |

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE ESTATE OF MARK THRASH, through its administrator IRENE THRASH; IRENE THRASH, individually; DANA THRASH and BERNARD RILEY<br><br>Plaintiffs,<br><br>v.<br><br>OFFICER THOMAS ALDRIDGE, individually, and UNION PACIFIC RAILROAD CORP.,<br><br>Defendants. | No. 01 C 9366<br><br>Magistrate Judge Arlander Keys |

DOCKETED DEC 1 8 2003

## **MEMORANDUM OPINION AND ORDER**

This matter came before the Court for a bench trial, which was conducted between October 27 and October 29, 2003. The Court heard closing arguments on October 29, 2003, and the parties filed post-trial proposed findings of fact and conclusions of law. For the reasons set forth below, the Court finds that Plaintiffs have failed to carry their burden on all of their claims.

### **I. Findings of Fact**[1]

On December 20, 1999, Officer Thomas Aldridge, a security

---

[1]The following constitute the Court's findings of fact and conclusions of law pursuant to Rule 52(a) of the Federal Rules of Civil Procedure. To the extent certain findings may be deemed conclusions of law, they shall also be considered conclusions. Similarly, to the extent matters contained in the conclusions of law may be deemed findings of fact, they shall also be considered findings.

officer with Union Pacific Railroad Corp. ("Union Pacific"), shot and killed Mark Thrash during the course of an attempted robbery. Mr. Thrash's estate and family members brought suit against Defendants, alleging that: 1) Officer Aldridge used constitutionally excessive force, in violation of 42 U.S.C. § 1983 et seq. (West 2003); 2) Union Pacific maintained a policy or custom that led to the deprivation of Mr. Thrash's constitutional rights, in violation of 42 U.S.C. § 1983 et seq. (West); 3) Defendants' negligence was the proximate cause of Mr. Thrash's death; and 4) Officer Aldridge battered Mr. Thrash.

Early on the morning of December 20, 1999, Thomas Aldridge was on duty as a Special Agent (police officer) for the Union Pacific Railroad at its Auto Ramp Facility in Chicago Heights, Illinois. Special Agents of the railroad have the same authority as municipal police officers. Prior to December 20, 1999, there had been a rash of thefts of new automobiles from the facility, where new automobiles are delivered after completion of the manufacturing process and prior to shipment to their final destinations.

At approximately 7:00 a.m. on that morning, Officer Aldridge and others observed three new automobiles heading toward the exit gate of the facility. The three vehicles stopped in line behind the closed gate while the driver of the first vehicle attempted to manually open the gate. The drivers of the three vehicles obviously were attempting to steal them. Officer Aldridge ran from

2

the guardhouse toward the last vehicle in line, which was being driven by Mark Thrash. Officer Aldridge--who was in full uniform--opened the driver's side door of the vehicle, identified himself as a police officer, grabbed Mr. Thrash by the jacket, and ordered him to put the vehicle in park and to exit the vehicle. Mr. Thrash did not immediately respond to Officer Aldridge's command, but continued to look straight ahead. Mr. Thrash then reached down to the gear shift and moved the gear shift forward, seemingly into park. Mr. Thrash then attempted to reach behind his seat, with his right hand, in a move which could have been construed as reaching for a weapon. At that point, Officer Aldridge drew his weapon with his right hand, pointed it at Mr. Thrash, and again ordered him to exit the vehicle. Mr. Thrash responded, "OK, OK" and showed his hands. However, the vehicle was in reverse and Mr. Thrash hit the gas pedal, causing the vehicle to move backwards violently. The opened driver's side door struck Officer Aldridge, knocking him to the ground and causing his weapon to discharge. The discharge of the weapon was unintentional. Mr. Thrash then exited the vehicle--which was still in reverse--and fell forward on the pavement. The still-moving vehicle rolled over Mr. Thrash's legs and Officer Aldridge jumped into the vehicle and put it in park. Officer Aldridge noticed blood on the ground near the top of Mr. Thrash's body, turned him over to check for a pulse and began administering CPR to Mr. Thrash. Mr. Thrash died immediately. This entire

sequence of events--from the time Officer Aldridge first opened the driver's side door to his being knocked to the ground--took about 8-10 seconds.

## II. Credibility Resolutions

Because Mr. Thrash is deceased, Officer Aldridge was the only witness to testify who had up-close, personal knowledge about what exactly transpired during the 8-10 seconds starting when Officer Aldridge opened the driver's side door of the vehicle and ending when he was knocked to the ground, causing the gun to discharge. Three witnesses testified regarding what they observed from a distance prior to Officer Aldridge's confrontation with Mr. Thrash. Three other witnesses testified as to what Officer Aldridge told them about the sequence of events during the post-incident investigation. With the exception of Sgt. Michael Pauley, one of the post-incident investigators--who wrote in his report, and testified, that Officer Aldridge told him that he drew his weapon as he was running toward the vehicle but before reaching the vehicle--the testimony of the witnesses was consistent with that of Officer Aldridge. There simply is no reason not to credit the testimony of Officer Aldridge in its entirety. Having carefully observed the testimonial demeanor of Officer Aldridge, and having considered the entire record, the Court finds that his recitation of the sequence of events is credible. To the extent that Plaintiffs have pointed out minor discrepancies between what

4

Officer Aldridge told investigators and his testimony at trial, the Court credits his testimony.

### III. Conclusions of Law

### Jurisdiction and Venue

This Court has original jurisdiction over Plaintiffs' § 1983 claims pursuant to 28 U.S.C. § 1331 (West 2003). The Court has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367(a) (West 2003), because they arose out of the same incident that forms the basis of Plaintiffs' § 1983 claims.

Venue is proper in the Northern District of Illinois, Eastern Division, because the cause of action arose in Cook County, Chicago Heights, Illinois. The parties have consented to proceed to trial before this Court.

**1. Excessive Force**

In Plaintiffs' excessive force claim, brought under 42 U.S.C. § 1983, "the specific constitutional right allegedly infringed by the challenged application of force . . . will be . . . the Fourth Amendment's prohibition against unreasonable seizures of the person." *Graham v. Connor*, 490 U.S. 386, 394 (1989). Plaintiffs bear the burden of proof on their excessive force claim. *Rice v. Burks*, 999 F.2d 1172, 1174 (7th Cir. 1993).

Before considering whether Officer Aldridge's conduct was constitutionally unreasonable, the Court must first determine

5

whether Officer Aldridge had seized Mr. Thrash.

### A. Officer Aldridge Seized Mr. Thrash

Under 42 U.S.C. § 1983, Plaintiffs must demonstrate that Officer Aldridge, acting under color of state law, deprived Mr. Thrash of his Fourth and Fourteenth Amendment right to be free from unreasonable seizure by the State. *Soldal v. Cook County*, 506 U.S. 56, 60 n. 6 (1992). The Constitution is not violated, however, unless Plaintiffs demonstrate that a seizure occurred. In *United States v. Mendenhall*, 446 U.S. 544, 554-55 (1980), the Supreme Court held that a person has been seized within the meaning of the Fourth Amendment if a reasonable person, in view of all of the circumstances surrounding the incident, would have believed that he was not free to leave.

The Court finds that Officer Aldridge seized Mr. Thrash. Officer Aldridge opened the driver's side door of the vehicle that Mr. Thrash was attempting to steal, and ordered Mr. Thrash to stop and to exit the vehicle. Mr. Thrash did not exit the vehicle, but he did move the gear shift forward, apparently to the park position. After Mr. Thrash moved his right hand behind the driver's seat, Officer Aldridge drew his weapon. Mr. Thrash responded by saying "O.K., O.K.," and demonstrated that he did not have a weapon in his hand. Seconds later, the vehicle reversed, knocking Officer Aldridge to the ground and causing his weapon to discharge. Although Officer Aldridge did not have direct physical

6

contact with Mr. Thrash at the time his weapon fired, Defendants do not dispute that Officer Aldridge intentionally restrained "the freedom of [Mr. Thrash] to walk away." *Tennessee v. Garner*, 471 U.S. 1, 7 (1985).

## B. The Fourth Amendment's Reasonableness Standard Applies

Defendants assert that Officer Aldridge cannot be held liable for exerting constitutionally excessive force, because he did not intend to shoot Mr. Thrash. Plaintiffs need not make such a showing to succeed on their excessive force claim. *See Graham*, 490 U.S. at 397 (a claim that an officer used excessive force is evaluated "in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation.") Instead, Plaintiffs must demonstrate that Officer Aldridge's conduct was unreasonable under the Fourth Amendment. *Id.* at 395. *See also, Wilkins v. May*, 872 F.2d 190, 193 (7th Cir. 1989) (the Fourth Amendment protects individuals from excessive force until the "arrest has taken place and the arrested person has been placed in the company of arresting officers.")

Under the Fourth Amendment's "reasonableness" standard, courts balance the amount of force used in relation to the danger posed to the arresting officer or others. *Jacobs v. City of Chicago*, 215 F.3d 758, 773 (7th Cir. 2000). Courts consider three factors when deciding whether an officer's conduct passes constitutional muster: 1) the severity of the crime; 2) whether the suspect poses an

7

immediate threat to the safety of the officer or others; and 3) whether the suspect is actively resisting arrest or attempting to flee. *Graham*, 490 U.S. at 396. In judging the reasonableness of the force used, courts must view the events from the perspective of a reasonable officer in the midst of the same circumstances. *Id.* (noting that officers frequently need to make split second decisions about uncertain and rapidly evolving circumstances.)

In this case, Mr. Thrash was attempting to steal a vehicle, which is a felony. Officer Aldridge ran toward the vehicle, in full police uniform, commanding Mr. Thrash to stop and exit the vehicle. When Officer Aldridge opened the driver's side door of the vehicle and grabbed Mr. Thrash, Mr. Thrash refused to exit. Instead of peacefully surrendering or expressly acknowledging Officer Aldridge's authority, Mr. Thrash suspiciously reached behind the right side of the driver's seat. Officer Aldridge lost sight of Mr. Thrash's right hand, feared the suspect was reaching for a weapon, and drew his own gun for protection. Mr. Thrash then demonstrated to Officer Aldridge that he did not have a gun in his hand. But before Officer Aldridge could re-holster his weapon, the car quickly reversed[2]. The open driver's side door knocked Officer

---

[2] This also further supports the conclusion that Mr. Thrash was not submitting to Officer Aldridge's authority. Although Officer Aldridge believed that Mr. Thrash had placed the car in park, the car was obviously still in gear. This gives rise to the inference that Mr. Thrash still entertained notions of fleeing the scene with the stolen vehicle.

Aldridge to the ground, and his gun discharged, killing Mr. Thrash.

The Court finds that Officer Aldridge reasonably feared that Mr. Thrash was reaching for a weapon, and that he reasonably believed that his personal safety was in jeopardy when he drew his weapon. According to Officer Aldridge's testimony -which the Court wholly credits-- only a matter of seconds passed between the time that he realized that Mr. Thrash was not holding a weapon and the time that the vehicle reversed, knocking him to the ground and causing his weapon to discharge. Plaintiffs make much of the fact that Officer Aldridge did not immediately remove his finger from the trigger, once it was apparent that Mr. Thrash did not have a gun. In a perfect world, perhaps, Officer Aldridge should have instantly disarmed himself. But, despite Plaintiffs' arguments to the contrary, the law does not hold Officer Aldridge to such a standard. *Graham*, 490 U.S. at 396-97 (the court should judge the officer "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.")

Officer Aldridge was forced to act quickly to apprehend a suspect whom Officer Aldridge reasonably believed was armed. It was only a matter of seconds between the time that Officer Aldridge saw that Mr. Thrash was not armed, and the time Mr. Thrash caused the vehicle to reverse and knock Officer Aldridge down. Given the short amount of time that elapsed, the Court cannot conclude that Officer Aldridge's failure to instantly eliminate the

possibility of using deadly force was unreasonable. Therefore, the Court finds in favor of Defendant Aldridge on Plaintiffs' excessive force claim.

## 2. Policy and Practice Claim

In Count II of their Complaint, Plaintiffs contend that Union Pacific's failure to properly train Officer Aldridge renders the railroad liable under 42 U.S.C. § 1983 (West 2003). Specifically, Plaintiffs argue that Union Pacific should have: 1) adequately trained officers to handle the Glock 19 that Officer Aldridge used while on the job; and 2) trained its officers to properly remove suspects from vehicles that are being stolen.

Union Pacific can be held liable under Section 1983 only for acts taken pursuant to its official policy, statement, ordinance, regulation, or decision, or pursuant to a municipal custom. *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 691 (1978) (noting that there is no respondeat superior liability under § 1983.) Union Pacific's allegedly unconstitutional "custom" or "policy," can take one of three forms: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a "custom or usage" with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policy-making authority.

10

*Brokaw v. Mercer County*, 235 F.3d 1000, 1013 (7th Cir.2000). Additionally, Plaintiffs must demonstrate the requisite causation; i.e., that Union Pacific's policy or custom was the "moving force" behind the alleged constitutional deprivation. *Gable v. City of Chicago*, 296 F.3d 531, 537 (7th Cir. 2002).

Importantly, the success of Plaintiffs' failure to train and policy claims against Union Pacific are contingent upon their ability to prove that Officer Aldridge used constitutionally excessive force in seizing Mr. Thrash[3]. *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986). Having decided that Officer

---

[3] The Court acknowledges that several courts in different circuits have ruled that a municipality may be held liable under *Monell*, even where no individual police officer, official or employee is found liable for constitutional violations. *See, e.g., Speer v. City of Wynne, Arkansas,* 276 F.3d 980, 985-86 (8th Cir. 2002) (noting that "situations may arise where the combined actions of multiple officials or employees may give rise to a constitutional violation, supporting municipal liability, but where no one individual's actions are sufficient to establish personal liability for the violation"); *Fagan v. City of Vineland*, 22 F.3d 1283, 1291 (3d Cir. 1994) (reasoning that Heller's holding is limited to cases where the plaintiff is seeking to hold the municipality liable only under a theory of *respondeat superior.*) Initially, the Court notes that Plaintiffs are not contending that a combination of several individuals' actions gave rise to Mr. Thrash's constitutional injury. More importantly, the Seventh Circuit has explicitly rejected the holding in *Fagan* and its progeny, explaining that "*Monell* expressly holds that there is no cause of action for *respondeat superior* liability against a municipal corporation under 42 U.S.C. § 1983." *Thompson v. Boggs*, 33 F.3d 847, 859 n. 11 (7th Cir. 1994). The Seventh Circuit has consistently ruled that "[a] failure to train theory or a failure to institute municipal policy theory requires a finding that individual officers are liable on the underlying substantive claim." *Tesch v. County of Green Lake*, 157 F.3d 465, 477 (7th Cir. 1998).

Aldridge did not use excessive force, the Court cannot conclude that Union Pacific's policies or alleged failure to train Officer Aldridge resulted in a constitutional injury to Mr. Thrash. *Tesch v. County of Green Lake*, 157 F.3d 465, 477 (7th Cir. 1998); *Estate of Phillips v. City of Milwaukee*, 123 F.3d 586, 596-97 (7th Cir. 1997). The Supreme Court has explained that:

> neither *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm. If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.

*Treece v. Hochstetler and City of Naperville*, 213 F.3d 360 (7th Cir. 2000), quoting *Heller*, 475 U.S. at 799.

Therefore, the Court finds against Plaintiffs and for Defendant Union Pacific on Count II of Plaintiffs' Amended Complaint. Having determined that Defendants did not violate Mr. Thrash's right under § 1983, the Court need not address Plaintiffs' request for punitive damages.

### 3. Negligence and the Illinois Wrongful Death Act

Count III of Plaintiffs' Amended Complaint alleges that Defendants' negligence proximately caused Mr. Thrash's death. As a result of Mr. Trash's death, Plaintiffs claim that his estate suffered pecuniary loss as well as the loss of society and

12

companionship. Plaintiffs seek damages for this loss under the Illinois Wrongful Death Act. 740 ILCS 180/2 (West 2003)[4].

To prevail on their wrongful death claim, Plaintiffs must first prove that Defendants breached a duty to Mr. Thrash, and that this breach was the proximate cause of his death. *Silverman v. Ballantine,* 694 F.2d 1091, 1098 (7th Cir. 1982). Plaintiffs' recovery will be barred, however, if the Court determines that Mr. Thrash's own fault contributed more than 50% to the proximate cause of his death. 735 ILCS 5/2-1116(c) (West 2000). A person is contributorily negligent when he acts without the degree of care that a reasonably prudent person would have used under like circumstances. *Zook v. Norfolk & Western Ry. Co.,* 268 Ill. App.3d 157, 170, 642 N.E.2d 1348, 1358 (1994).

On the first issue, Plaintiffs contend that Officer Aldridge breached his duty to prevent the accidental use of deadly force. *Rutledge v. Springborn,* 836 F. Supp. 531 (N.D. Ill. 1993). On the second issue, Plaintiffs wisely do not dispute that Mr. Thrash's own conduct substantially contributed to his death. Plaintiffs argue, however, that the Court must ignore Mr. Thrash's comparative

---

[4] The Court notes that Illinois law prohibits surviving spouses and the next of kin from receiving damages for loss of consortium under both the Wrongful Death Act and the common law. *See Knierim v. Izzo,* 22 Ill.2d 73, 82-83, 174 N.E.2d 157 (1961). In addition, Plaintiffs' Complaint has counts labeled "Survival" and "Loss of Society." *See* the Illinois Survival Statute. 755 ILCS 5/27-6 (West 2003). Having determined that Mr. Thrash's contributory negligence bars his recovery, the Court need not discuss these various forms of damages.

negligence, because Officer Aldridge acted recklessly. Officer Aldridge's alleged recklessness is relevant, Plaintiffs argue, because Illinois law provides that a plaintiff's own negligence will not reduce his recovery or damages where the defendant acts willfully or wantonly. *Burke v. 12 Rothschild's Liquor Mart, Inc.*, 148 Ill.2d 429, 451-52 (1992). In support of their position that Officer Aldridge acted recklessly, Plaintiffs cite to *People v. Bauman*, 34 Ill. App.3d 582, 589, 340 N.E.2d 178, 183 (1st Dist. 1975) for the proposition that "pointing a loaded revolver at another is such a deviation from the standard of care which a reasonable person would exercise that it constitutes recklessness." Although Plaintiffs' recitation of the law is technically correct, the devil lies in the details. *Bauman* is readily distinguishable and has little application here. The *Bauman* court ruled that a partygoer who pointed a loaded revolver at, and ultimately killed, the host acted recklessly. 340 N.E.2d at 183.

This holding, of course, is limited -- the court's ruling does not encompass every individual who points a gun at another. *See Burke*, 148 Ill.2d at 451, 593 N.E.2d at 532 ("A determination of willful and wanton conduct will be based on the facts of any given case.") The law is clear that "when an officer believes that a suspect's actions [place] him . . . in imminent danger of death or serious bodily injury, the officer can reasonably exercise the use of deadly force." *Sherrod v. Berry*, 856 F.2d 802, 805 (7th Cir.

14

1988). So, while the *Bauman* defendant may have acted recklessly when pointing his gun, the Court finds that Officer Aldridge acted reasonably when drawing his weapon, because he reasonably believed that he was in imminent danger of death or serious bodily injury.

In this case, the Court has found that Officer Aldridge did not draw his weapon until he reasonably believed that Mr. Thrash was reaching for a weapon. Although Plaintiffs make much of the fact that Officer Aldridge knew or should have known that Mr. Thrash did not have a weapon at the time the deadly shot was fired, the Court again notes that the entire incident took place in less than 10 seconds, and after Mr. Thrash's vehicle knocked Officer Aldridge to the ground. *See Graham v. Connor,* 490 U.S. 386, 396-97 (noting that the reasonableness calculation "must embody allowance for the fact that police officers are often forced to make split-second judgments – in circumstances that are tense, uncertain, and rapidly evolving.") Because the Court concludes that Officer Aldridge acted reasonably under the circumstances, it is irrelevant that the Illinois Supreme Court has determined that a plaintiff's own contributory negligence will not bar his recovery where a defendant acts willfully and wantonly. *Burke,* 148 Ill.2d at 450-51, 593 N.E.2d at 531-32.

Conversely, the Court finds that Mr. Thrash did not act with a degree of care that a reasonably prudent person would have under the circumstances. While committing a criminal act does not

automatically constitute liability-barring contributory negligence, Mr. Thrash's decision to steal a vehicle from Union Pacific was just the first of many bad decisions on his part that led to his demise. Not expressly submitting to Officer Aldridge's authority was Mr. Thrash's next mistake, which he compounded by suspiciously reaching behind the front seat of the car while Officer Aldridge was attempting to apprehend him. This conduct reasonably led Officer Aldridge to believe that Mr. Thrash was reaching for a weapon and that his life may be in danger. Finally, the Court finds that Mr. Thrash's act of reversing the car (be it intentional or accidental) and knocking Officer Aldridge to the ground, while he was holding a loaded weapon, proximately caused Mr. Thrash's death. Under these circumstances, the Court readily concludes that Mr. Trash's own negligent conduct contributed to more than 50% of the proximate cause of his death. Having found that "the contributory fault on the part of [Mr. Thrash] is more than 50% of the proximate cause of the injury or damage for which recovery is sought," 735 ILCS 5/2-1116 (West 2003), the Court further finds that Plaintiffs are barred from recovering any damages for Officer Aldridge's alleged negligence. *Id.; see also, Timmerman v. Modern Industries, Inc.*, 960 F.2d 692, 698 (7th Cir. 1992) (noting that the Illinois Comparative Negligence Act bars plaintiffs from recovering damages in such instances.)

**4. State Law Battery**

Finally, in Count VI of their Complaint, Plaintiffs allege that Mr. Aldridge intentionally and knowingly caused Mark Thrash great bodily harm. Plaintiffs' Proposed Findings of Fact and Conclusions of Law does not address the claim, however. Defendants correctly argue that Plaintiffs have failed to introduce evidence establishing the requisite mental state to support such a claim.

Under Illinois law, a battery occurs when one acts intentionally or knowingly. Section 12-3 of the Illinois Criminal Code provides: "(a) A person commits battery if he intentionally or knowingly without legal justification and by means, (1) causes bodily harm to an individual or (2) makes physical contact of an insulting or provoking nature with an individual." 720 ILCS 5/12-3 (a) *et seq.* (West 2003).

In this case, Defendants do not dispute the fact that Mr. Trash was harmed, but contend that there was no evidence introduced at trial demonstrating that Officer Aldridge acted intentionally or knowingly. Section 4-5 of the Illinois Criminal Code provides, in pertinent part, that a person acts knowingly or with knowledge of:

> (b) The result of his conduct, described by the statute defining the offense, when he is consciously aware that such result is practically certain to be caused by his conduct.

720 ILCS 5/4-5 (West 2003).

In the instant case, Plaintiffs failed to prove that Officer Aldridge should have been "consciously aware" that injury to Mr. Trash was the natural and probable consequence of his decision to

17

draw his weapon. *See People v. Herr*, 87 Ill. App.3d 819, 822, 409 N.E.2d 442. (1980) (Knowledge and intent involve an awareness of the harm resulting from one's conduct.) Absent evidence of intentional bodily harm, Plaintiffs' battery claim fails as well, and the Court enters judgment in favor of Defendants on Count VI as well.

## Conclusion

For the reasons set forth above, the Court enters Judgment in favor of Defendants and against Plaintiffs on all counts of Plaintiffs' Amended Complaint. So Ordered.

Dated: December 17, 2003    E N T E R:

_____
ARLANDER KEYS
United States Magistrate Judge

AO 450(Rev. 5/85)Judgment in a Civil Case

# United States District Court
## Northern District of Illinois
### Eastern Division

Mark Thrash etal　　　　　　　　　　**JUDGMENT IN A CIVIL CASE**

　　　　　v.　　　　　　　　　　　　Case Number: 01 C 9366

Thomas Aldridge etal

- ☐ Jury Verdict. This action came before the Court for a trial by jury. The issues have been tried and the jury rendered its verdict.

- ■ Decision by Court. This action came to trial or hearing before the Court. The issues have been tried or heard and a decision has been rendered.

IT IS HEREBY ORDERED AND ADJUDGED that Judgment is entered in favor of the Defendants and against the Plaintiffs on all counts of the Plaintiffs' Amended Complaint.

Michael W. Dobbins, Clerk of Court

Date: 12/17/2003

Alicia Castillo, Deputy Clerk